# United States Court of Appeals for the Federal Circuit

05-5158

KEVIN J. METZ,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Gary R. Myers, of Weare, New Hampshire, argued for plaintiff-appellee.

J. Reid Prouty, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. On the brief was Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Deputy Director, and Christian J. Moran, Attorney. Of counsel was Charles Daniel Musselman, Jr., Air Force Legal Services Agency/JACL, of Arlington, Virginia.

Appealed from: United States Court of Federal Claims

Judge Charles F. Lettow

# United States Court of Appeals for the Federal Circuit

05-5158

KEVIN J. METZ,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:  September 18, 2006

_____

Before SCHALL, DYK, and PROST, Circuit Judges.

PROST, Circuit Judge.

The United States appeals the decision of the United States Court of Federal Claims finding that Kevin J. Metz's separation from the United States Air Force was involuntary and granting his motion for judgment upon the administrative record.  Metz v. United States, 61 Fed. Cl. 154 (Fed. Cl. 2004).  Because Metz failed to assert that his separation was involuntary before the Air Force Board for Correction of Military Records ("AFBCMR" or "Board"), he is foreclosed from relying on the Military Pay Act's, 37 U.S.C. § 204, money-mandating status as a basis for his Tucker Act, 28 U.S.C. § 1491, claim.  We therefore reverse.

## I.  BACKGROUND

### A.  Factual Background

The facts of this case are well-described in the Court of Federal Claims' decision. See Metz, 61 Fed. Cl. 154.  Only those facts most relevant to the issues before us are repeated here.  Metz enlisted in the Air Force in 1977, and his primary duty station was Robins Air Force Base ("RAFB") in Georgia.  On April 29, 1994, Metz provided a urine sample as part of a routine, random drug screening conducted by the Air Force.  Two weeks later, he was informed that his test had returned positive for marijuana.  On May 25, 1994, Metz was formally charged with wrongful use of marijuana in violation of Article 112a of the Uniform Code of Military Justice ("UCMJ"), codified at 10 U.S.C. §§ 801-946.  The charge sheet setting forth the averments against Metz indicated that his case was to be tried by special court-martial.

On August 25, 1994, after consulting counsel, Metz signed a Request for Discharge in Lieu of Trial by Court-Martial ("Request") in which, as the title suggests, he requested discharge in lieu of trial by court-martial.  Additionally, the Request stated, inter alia, that Metz had consulted counsel, that he was aware of the adverse nature of a discharge under other than honorable conditions (e.g., loss of veterans benefits), and that he was not requesting lengthy service probation consideration.  The Request was also accompanied by a second page stating that the Request was Metz's voluntary decision made after being counseled about his rights and privileges and the possible effects of discharge under those circumstances.

In accordance with the Request, Metz received a discharge under other than honorable conditions from the Air Force on September 8, 1994, at which time he was

credited with over sixteen years of active federal service. In 1995, about a year after his discharge, Metz had his urine sample tested for DNA at a private laboratory. The laboratory technician who tested Metz's sample concluded that the sample contained Metz's DNA as well as the DNA of another person.

## B. Procedural History

After receiving the results of the DNA testing, Metz filed a petition with the AFBCMR. In his petition, Metz asserted that the DNA test results showed that his sample was tainted and that it could not serve as a basis for his discharge. He also requested that he be reinstated in the Air Force, given back pay and allowances from the date of his separation until the date of his reinstatement, and that he receive credit for the time between separation and reinstatement for purposes of pay, promotion, and retirement, and that all materials relating to the positive urinalysis results be expunged from his records.

On July 24, 1998, the Board denied Metz's request without conducting a hearing, relying upon two separate grounds. First, the Board found that Metz had failed to produce sufficient relevant evidence to demonstrate the existence of probable error or injustice. Specifically, the Board focused on the lack of evidence challenging the chain of custody of Metz's urine sample between the time of collection and the original urinalysis screening. Second, the Board relied upon Metz's decision to submit the Request rather than face court-martial:

> In addition, the applicant had an opportunity to establish his innocence when the court-martial charge was preferred against him by demanding trial by court-martial thereby requiring the prosecution to establish his guilt beyond a reasonable doubt. However, he chose not to pursue court-martial instead. Applicant has not provided any evidence to sufficiently convince the Board that the discharge action was based on erroneous

information, that pertinent regulations were violated or that he was not afforded all rights to which entitled at time of his discharge. Therefore, in the absence of evidence to the contrary, we find no compelling basis to recommend granting the relief sought in this application.

In re Metz, No. 96-00259, slip op. at 6 (A.F.B.C.M.R. July 24, 1998) ("Initial Decision").

Although Metz's attorney, Mr. Myers, had requested that the Air Force hold Metz's urine sample indefinitely, and the Air Force indicated that it agreed to do so, his sample was destroyed on June 8, 1999. After learning of his sample's destruction, Metz petitioned the AFBCMR for reconsideration of its denial of his petition in light of the fact that the Air Force had destroyed his urine sample.

The Board denied his reconsideration request, concluding that there was no evidence of error or injustice because (1) the destruction of Metz's urine sample was a "good faith mistake"; (2) Metz waived his right to review the laboratory procedures when he opted not to have a trial by court-martial and chose not to submit an application for lengthy service probation consideration; (3) the presence of another person's DNA in his sample did not prove that the positive results were tainted because the Air Force did not collect the sample in a DNA-sterile environment; and (4) Metz had again failed to present sufficient evidence to challenge the chain of custody. In re Metz, No. 96-00259, slip op. at 5-6 (A.F.B.C.M.R. July 28, 2003).

While his request for reconsideration was pending before the Board, Metz filed a complaint in the Court of Federal Claims and the proceeding was temporarily stayed pending the outcome of his reconsideration petition before the Board. In his complaint, Metz invoked the Tucker Act as the basis for that court's jurisdiction. Following the Board's reconsideration decision, the Court of Federal Claims lifted the stay and undertook to resolve the motions that had been filed by the parties in the case, namely

the government's motion to dismiss or, in the alternative, for judgment upon the administrative record, and Metz's motion for judgment upon the administrative record. In its motion, the United States challenged the Court of Federal Claims' jurisdiction to hear Metz's claim based upon his voluntary withdrawal from the military and asserted that the administrative record did not justify granting the relief that Metz had requested. In response to the government's motion, Metz asserted, for the first time, that his separation from the Air Force was not voluntary because he had received ineffective assistance of counsel in responding to the court-martial charges brought against him.

In considering the motions, the Court of Federal Claims observed that the voluntariness of Metz's separation was an issue that Tippett v. United States, 185 F.3d 1250, 1255 (Fed. Cir. 1999), had characterized as jurisdictional. Based on its view that voluntariness was jurisdictional in nature, the court held an evidentiary hearing on the issue of whether Metz received ineffective assistance of counsel, even though he had failed to raise the issue before the Board and the administrative record was therefore silent. The court noted that in order to possess subject matter jurisdiction over Metz's case, Metz was required to identify some independent basis, aside from the Tucker Act, that entitles him to monetary payment from the federal government. The court recognized that our precedent had described the Military Pay Act as a money-mandating source of subject matter jurisdiction up to the time of a plaintiff's voluntary separation or discharge, but treated the Military Pay Act as non-money-mandating for the period of time following a plaintiff's voluntary separation. Thus the result of a voluntary separation is that the court loses subject matter jurisdiction over the case. See, e.g., Carmichael v. United States, 298 F.3d 1367, 1371 (Fed. Cir. 2002) ("If a

discharge from service is voluntary, then the Court of Federal Claims lacks jurisdiction to review the discharge or any back pay damages claims."); Adkins v. United States, 68 F.3d 1317, 1321 (Fed. Cir. 1995) ("If, however, [plaintiff's] retirement was 'voluntary' he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim."). Based on evidence presented at the hearing, the Court of Federal Claims found that Metz received ineffective assistance of counsel and that therefore his Request for discharge and resulting separation from the Air Force was involuntary. The court proceeded to rule on the parties' motions for judgment upon the administrative record, ultimately granting Metz's motion, denying the government's motion, and remanding the question of appropriate relief to the Secretary of the Air Force.

The United States timely appealed the Court of Federal Claims' decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

We begin with subject matter jurisdiction. "In a given case, whether Tucker Act jurisdiction exists is a question of law that we review without deference to the decision of the trial court." In re United States, No. 06-M806, --F.3d--, 2006 WL 2597835, at *5 (Fed. Cir. Sept. 11, 2006) (citing Core Concepts of Fla., Inc. v. United States, 327 F.3d 1331, 1334 (Fed. Cir. 2003); Clark v. United States, 322 F.3d 1358, 1362 (Fed. Cir. 2003)). There is no dispute that Metz filed this suit under the Tucker Act, which authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims and waives the government's sovereign immunity for those actions. See 28 U.S.C. § 1491 (2000). "As we have explained, however, '[t]he Tucker

Act does not itself provide the substantive cause of action; instead a plaintiff must look elsewhere for the source of substantive law on which to base a Tucker Act suit against the United States.'" Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc)). That source must be "money-mandating." See Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion).

To reiterate, the Court of Federal Claims considered whether the Military Pay Act provided Metz the necessary money-mandating source upon which to base his claim. In discussing whether Metz could use the Military Pay Act as such a source, the Court of Federal Claims declared that if Metz's discharge was voluntary, the Military Pay Act would no longer provide him with a money-mandating statutory basis for jurisdiction in that court. In light of the jurisdictional nature in which the Court of Federal Claims viewed the issue of the voluntariness of Metz's separation, the court permitted Metz to assert for the first time that he had received ineffective assistance of counsel in response to the government's motion to dismiss and subsequently held an evidentiary hearing to ascertain the relevant facts surrounding Metz's separation from the Air Force.

In supplemental briefing, the government asserted that our en banc portion of Fisher limited the Court of Federal Claims' inquiry when determining whether it possesses subject matter jurisdiction in a Tucker Act case. Fisher, according to the government, limited the jurisdictional inquiry by the Court of Federal Claims to whether the constitutional provision, statute, or regulation meets the money-mandating test, and clearly places the determination of whether a plaintiff can take advantage of the particular statute asserted to be money-mandating in the merits portion of the case. The

government therefore asserts that in accordance with <u>Fisher</u>, because the issue of voluntariness is not jurisdictional, it is subject to waiver if a plaintiff fails to raise an argument with respect to it before the Board. Further, the government argues that when the administrative record is silent on the issue of voluntariness because a plaintiff has failed to raise the issue before the Board, there is no basis for the Court of Federal Claims to conduct an evidentiary hearing because voluntariness is not a jurisdictional inquiry and the court should confine its review to the administrative record. The correct approach, according to the government, is for the court to declare the issue waived and dismiss for failure to state a claim upon which relief can be granted.

In response, Metz asserts that <u>Fisher</u> does not alter the jurisdictional nature of the voluntariness issue and that because it is a question of subject matter jurisdiction, it is not subject to wavier even though he did not raise it before the Board. Thus, the Court of Federal Claims has the ability to hold evidentiary hearings, as it did in this case, to determine the underlying jurisdictional facts relevant to Metz's argument that his counsel was ineffective. Metz also asserts that even if <u>Fisher</u> alters the jurisdictional nature of the voluntariness issue recognized in <u>Tippett</u>, the Court of Federal Claims retains the power to accept extrinsic evidence outside of the administrative record when the administrative record does not contain sufficient facts upon which to decide the issue of voluntariness.

In the en banc portion of <u>Fisher</u>, we made clear that whether the Court of Federal Claims possesses subject matter jurisdiction in a Tucker Act case is a one-step process described as follows:

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, <u>see</u> 28 U.S.C. § 1491(a)(1),

the trial court at the outset shall determine, either in response to a motion by the Government or <u>sua</u> <u>sponte</u> (the court is always responsible for its own jurisdiction), whether the Constitutional provision, statute, or regulation is one that is money-mandating.

If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.

If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act.

The trial court's determination regarding the money-mandating character of the statute at issue is of course subject to appellate review as a question of law.

402 F.3d at 1173 (en banc portion).

In <u>Fisher</u>, after determining that the source of substantive law in that case, 10 U.S.C. § 1201, was money-mandating, this court discussed the consequences of a plaintiff failing to establish all of the elements of the cause of action:

Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.

402 F.3d at 1175-76 (en banc portion). We then stated, "[c]ertainly it does not follow that, after deciding the case on the merits, the court loses jurisdiction because plaintiff loses the case." <u>Id.</u> at 1176. Relying on <u>Palmer v. United States</u>, 168 F.3d 1310 (Fed. Cir. 1999), we stated that such a challenge, i.e., as to whether plaintiff's case fits within the scope of the source, "is raised . . . proper[ly] . . . <u>under Federal Rule of Civil</u>

Procedure 12(b)(6), a dismissal for failure to state a claim on which relief can be granted—what the Court of Federal Claims formerly denominated an RCFC 12(b)(4) motion—and not a Rule 12(b)(1) dismissal for lack of jurisdiction." Id. (emphases added).

We are unable to fairly reconcile the above language of our en banc holding in Fisher with this court's prior opinion upon which Metz relies, i.e., Tippett. Fisher clearly states that the determination of whether a plaintiff's case fits within the scope of the source is properly raised under Fed. R. Civ. P. 12(b)(6), rather than Rule 12(b)(1). Id.; see also Doe v. United States, No. 05-5104, --F.3d--. 2006 WL 2589154, at *9 (Fed. Cir. Sept. 11, 2006) (reiterating that Fisher "clarified the distinction between the jurisdictional and merits inquiry under the statute [at issue]"); In re United States, 2006 WL 2597835, at *6 (noting that the proper course after Fisher is to consider whether the source of substantive law is money-mandating for jurisdictional purposes, and then to consider whether plaintiff's case fits within the scope of that source as part of the merits). It thus compels the conclusion that the issue of the voluntariness of a plaintiff's separation, a necessary requirement for a separated-plaintiff's case to fit within the scope of 37 U.S.C. § 204, is properly addressed under a Rule 12(b)(6) motion to dismiss and therefore is no longer a jurisdictional requirement appropriately challenged under Rule 12(b)(1). Therefore, if a plaintiff cannot establish that he is currently on active duty, he must assert and ultimately establish that his separation was involuntary in order to fit within the scope of, and take advantage of, the money-mandating status of § 204, or else his claim falls for failure to state a claim upon which relief can be granted.

Accordingly, we conclude that the issue of the voluntariness of a plaintiff's discharge is not jurisdictional; rather, is it a question that should be considered in the context of the merits of a plaintiff's case in determining whether a plaintiff can take advantage of § 204's money-mandating status. We have previously held that a service member need not seek relief from a military corrections board before suing in the Court of Federal Claims. See Martinez, 333 F.3d at 1304-06. However, we have also stated that when a service member does pursue such relief, the Court of Federal Claims reviews the Board's action under the same standard as any other agency action. See id. at 1314. Thus, the Court of Federal Claims should have applied its ordinary standard of review to those disputes of fact occurring in the proceedings at the Board: "whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998) (citing Skinner v. United States, 594 F.2d 824 (Ct. Cl. 1979)). This necessarily limits the Court of Federal Claims' review to the administrative record. See Cunkelman v. United States, 229 Ct. Cl. 857 (1982). This is not to say that the Court of Federal Claims loses its ability to hold evidentiary hearings to determine jurisdictional facts, or to consider "extra-record" evidence in extremely limited situations. Rather, the conclusion we are compelled to draw is that the issue of voluntariness is not a question of subject matter jurisdiction and therefore, a plaintiff may waive an argument with respect to that issue by not asserting it before the Board. Further, if a plaintiff has asserted an argument with respect to the voluntariness of his separation, but the Board has not adequately addressed it, generally the Court of Federal Claims may order a remand to the Board so

that the Board can address the plaintiff's challenge in the first instance, with the likelihood of appellate review by the court.

In Metz's case, the Military Pay Act has previously been held to be money-mandating. See, e.g., James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1998) (stating that 37 U.S.C. § 204 "serves as a money-mandating statute"); In re United States, 2006 WL 2597835, at *5 (same). That is because § 204 provides that a member of a uniformed service who is on active duty is "entitled to the basic pay of the pay grade to which assigned . . . ." 37 U.S.C. § 204(a) (2000). Thus, the Court of Federal Claims should have "declare[d] that it has jurisdiction over the cause, and . . . then proceed[ed] with the case in the normal course." Fisher, 402 F.3d at 1173. The normal course when faced with a motion to dismiss raising the voluntariness issue would have been to apply the court's standard of review to the administrative decision. In this case, the court correctly noted that "[t]he AFBCMR completely bypassed" the question of the voluntariness of Metz's separation. Metz, 61 Fed. Cl. at 165. The question then for the court would have been why the AFBCMR completely bypassed that issue.

The answer, as conceded by Metz, is that he never raised an argument with respect to ineffective assistance of counsel before the Board in the first instance: "Mr. Metz has never averred that substantive relief should have been granted by the AFBCMR because his lawyers in 1994 did not give him effective assistance of counsel or that he was separated without giving informed consent." (Appellee's Br. 6.) The administrative record did not support a finding of ineffective assistance of counsel without supplementation because Metz never asserted that his separation was involuntary before the Board. Thus, when the government raised the issue of the

voluntariness of Metz's separation in its motion to dismiss, Metz, for the first time, alleged that his separation was involuntary due to ineffective assistance of counsel.

The Board based its initial decision, <u>inter alia</u>, on the fact that Metz

had an opportunity to establish his innocence when the court-martial charge was preferred against him by demanding trial by court-martial thereby requiring the prosecution to establish his guilt beyond a reasonable doubt. However, he chose not to pursue this avenue and requested that he be discharged in lieu of trial by court-martial instead.

<u>Initial Decision</u>, slip op. at 6. That language clearly reflects the Board's understanding that Metz's decision to submit the Request in lieu of facing court-martial was a voluntary decision and therefore that his separation pursuant to that Request was also voluntary. If Metz wanted to challenge the Board's reasoning by asserting that his counsel was ineffective, at the latest, he was required to raise those assertions in his petition for reconsideration. The Board would then have to determine whether it would be appropriate to consider those assertions in a petition for reconsideration.

Because Metz did not assert in either his initial or reconsideration petition before the Board, that his separation was involuntary because he had received ineffective assistance of counsel, we conclude that he waived his ability to challenge the Board's decision based on the voluntariness of his separation. <u>See</u> <u>Murakami v. United States</u>, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (affirming Court of Federal Claims' determination that Murakami, who had failed to raise an argument before the Board, was precluded from raising that issue for the first time before the Court of Federal Claims); <u>United States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the

administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); see also Sw. Bell Tel. Co. v. Pub. Util. Comm'n, 208 F.3d 475, 487 (5th Cir. 2000) ("The failure to raise an issue at the administrative level waives the right to appellate review of that issue."). Further, because Metz has not asserted that any of the extremely limited situations in which the Court of Federal Claims may hear "extra-record" evidence are applicable to his case, there is no basis for us to consider the possibility of a remand.

Because we have concluded that Metz waived his argument that his separation was involuntary because of ineffective assistance of counsel, his claim does not fit within 37 U.S.C. § 204, which requires that a plaintiff's separation be involuntary. Metz's separation is presumed to be voluntary according to the statements made in the Request for Discharge and, because he has waived any argument to the contrary, the Court of Federal Claims should have granted the government's motion to dismiss. Determining that Metz's claim does not fit within the scope of § 204 should have ended the court's inquiry. Thus, we need not, and do not, address the Court of Federal Claims' findings with respect to its grant of summary judgment upon the administrative record in Metz's favor. Rather, our conclusion with respect to voluntariness compels us to reverse those summary judgment findings because Metz has waived his ability to establish a necessary predicate to relying on § 204: an involuntary separation.

CONCLUSION

Because the Court of Federal Claims' inquiry into subject matter jurisdiction in Tucker Act cases is limited to a determination of whether the source of substantive law is money-mandating, the issue of the voluntariness of a plaintiff's separation from

service is no longer a jurisdictional concern; rather, it is a part of the merits of a case brought under the Military Pay Act. In this case, because Metz failed to challenge the voluntariness of his separation before the Board, he has waived his ability to assert that his separation was involuntary due to ineffective assistance of counsel. Thus, he is foreclosed from relying upon the Military Pay Act's money-mandating status as a basis for his Tucker Act claim, and we conclude the Court of Federal Claims erred by conducting an evidentiary hearing on the issue of whether Metz's separation from the Air Force was involuntary. Accordingly, we reverse.

COSTS

Each party shall bear its own costs.

<u>REVERSED</u>