Rodney L. WRIGHT, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 07–668C.

United States Court of Federal Claims.

April 7, 2008.

Rodney L. Wright, Stone Mountain, GA, plaintiff pro se.

Courtney E. Sheehan, Washington, DC, with whom was Assistant Attorney General Jeffrey S. Bucholtz, for defendant.

## MEMORANDUM OPINION AND ORDER

CHRISTINE O.C. MILLER, Judge.

This case is before the court on defendant's RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and, alternatively, motion to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). Although plaintiff voluntarily retired from the United States Coast Guard after twenty-two years of service, plaintiff claims that he is entitled to an additional three years of service credit that he would have served but for the alleged misconduct by the Coast Guard related to his successful appeal of a non-judicial punishment. Argument is deemed unnecessary.

### FACTS

The following facts derive from the Administrative Record (the "AR"). On April 19, 1999, plaintiff received non-judicial punishment "for sending three e-mails 'of an obscene and inappropriate nature, specifically pornographic material' in violation of COMDTINST M5370.8A, Standards of Conduct, COMDTINST 5270.1D, Management of Electronic E-mail, and Department of Transportation Instruction 1350.2, Information Resource Management Manual, Chapter 11." Final Decision Department of Transportation, Board for Correction of Military Records ("DOT BCMR" or the "Board"), Docket No. 2000–035, at 1 (DOT BCMR Nov. 9, 2000) (the "2000 Board Decision"); AR at 22. On April 23, 1999, plaintiff appealed the non-judicial punishment arguing that unofficial use of e-mail is prevalent in the Coast Guard and that the non-judicial punishment was disproportionately harsh.

While awaiting resolution of the appeal, plaintiff requested to retire because his service was approaching the maximum years allowed at his pay grade without advancement (High Year Tenure); he was approaching the end of his enlistment and he could not reenlist without a waiver; and he would not be able to compete for advancement for twenty-four months following the non-judicial punishment, if upheld. The 2000 Board Decision summarized plaintiff's predicament: if plaintiff's appeal was resolved unfavorably, he could have been discharged from the military without retirement benefits; if the result was favorable, he would have been promoted to the position of chief storekeeper. By retiring, plaintiff ensured that he would receive retirement benefits, but gave up the ability to be to be promoted to the chief storekeeper rank if his appeal ended favorably. After approximately six months, the Commanding Officer set aside the non-judicial punishment by letter dated October 28, 1999.

Subsequently, on December 2, 1999, plaintiff filed his application for correction of his military record to advance him to chief storekeeper with an E–7 pay grade. See AR at 5, 280, 284. In a letter to the Chairman of the DOT BCMR dated November 10, 1999, plaintiff argued that, but for the unreasonable delay by the Coast Guard in deciding his appeal, he would not have been in the predicament of having to decide between remaining in the military while his appeal was pending, thereby risking the loss of his retirement benefits; or retiring and forgoing the possibility of being promoted if he prevailed on the appeal. See AR at 283–84. Because his appeal ultimately overturned the non-judicial punishment, plaintiff contended that he was entitled to retire at the chief storekeeper position and pay grade. The Coast Guard took the position that plaintiff was not entitled to be retired at the advanced position and pay level. See AR at 273. Pursuant to Coast Guard Regulations, in order to retire at the level of chief storekeeper, plaintiff would have been required to serve for an additional two years in that position. See AR

at 272. Significantly, when plaintiff retired, he acknowledged that he was giving up his right to be promoted. *See* AR at 270, 319. Finally, the Coast Guard argued that after the appeal ended in his favor, plaintiff was offered an opportunity to return to active duty to complete the two years of additional service, but elected not to do so. *See* AR at 273.

On November 9, 2000, the DOT BCMR issued the 2000 Board Decision granting plaintiff's request to be retired at the advanced pay grade. *See* AR at 22–34. The Board found reasonable plaintiff's actions in retiring to preserve his retirement benefits to support his family and his refusal to accept the Coast Guard's offer to return to active duty, thus concluding that plaintiff was entitled to the relief requested. Plaintiff's military records were corrected to reflect that he was advanced to a pay grade of E–7 as of September 1, 1999, and that he retired at that pay grade on October 31, 1999. *See* AR at 32.

On November 3, 2006, plaintiff filed a new application with the DOT BCMR to correct his military records to reflect that he retired with twenty-five years of military service, not twenty-two years, and that he retired on October 31, 2002, not October 31, 1999. *See* Final Decision, DOT BCMR, Docket No. 2007–050, at 1 (Aug. 30, 2007) (the "2007 Board Decision"); AR at 5, 146. Plaintiff argued that, because the 2000 Board Decision found that the Coast Guard acted unfairly and did not make a legitimate effort to return him to active duty, he should be credited with three years of service that he would have served, but for the non-judicial punishment and ensuing appeal. *See* AR at 10, 147. He argued further that the 2000 Board Decision already ordered this relief.

The Coast Guard asserted that the application to correct the record to reflect additional time served was untimely. *See* AR at 11 (citing 33 C.F.R. § 52.22 (2008) ("An application for correction of a record must be filed within three years after the applicant discovered or should have discovered the alleged error or injustice.")). Because the DOT BCMR issued its original decision in November 2000 and the Coast Guard implemented the relief in January 2001, the Coast Guard responded that plaintiff's application was filed more than five years after the alleged error was, or should have been, discovered.

Plaintiff rejoined that the later application to the Board was not untimely, given that the requested relief was proper implementation by the Coast Guard of the 2000 Board Decision. *See* AR at 45. Alternatively, plaintiff argued that, if his application was considered untimely, the delay in filing should be excused because water damage destroyed his records in July 2002, and a copy of the final decision was not available on the BCMR website. *Id.*

The 2007 Board Decision determined that whether plaintiff should be awarded active duty credit for the time that he intended to serve was a new issue not considered by the Board in the 2000 proceeding and that his application therefore was docketed correctly as a new case. *See* AR at 14. However, the 2007 Board Decision deemed plaintiff's application for constructive service credit untimely, citing the statutory requirement that an application must be brought "within three years of the date the alleged error or injustice was, or should have been, discovered." *Id.* (citing 10 U.S.C. § 1552[ (b) ] (2000); 33 C.F.R. § 52.22). The DOT BCMR found that plaintiff should have discovered the alleged error in November 2000 when the Board issued the prior decision or, at the latest, in January 2001 when plaintiff received a letter informing him of the 2000 Board Decision's determination that he was retired with twenty-two years of service credit. The 2007 Board Decision found plaintiff's claim that his records were allegedly destroyed by a flood unsupported in the record, nor was the Board persuaded that failure to post the 2000 Board Decision on the website excused plaintiff's delay in seeking the correction. Plaintiff also never denied that he received the Board's final decision in December 2000.

The 2007 Board Decision also considered plaintiff's "likelihood of success on the merits of the claim," and found that it was highly unlikely that plaintiff would prevail on his claim. AR at 15. The Board stated that an applicant must meet the constructive service

doctrine in order to qualify for back pay. "Constructive service is a doctrine under which military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation." *Id.* The constructive service doctrine requires that the applicant prove " 'that he was ["]ready, willing, and able["] to resume his military duties,' " AR at 17–18 (quoting *Anderson v. United States,* 59 Fed.Cl. 451, 458 (2004)), and that the discharge or separation be voided. Despite plaintiff's indication in 1998 that, prior to the non-judicial punishment, he intended to reenlist in the Coast Guard for an additional three years, the Board did not consider this evidence to show that plaintiff's "retirement was illegal, involuntary, or improper." AR at 17. The 2007 Board was impressed that the 2000 Board Decision never considered whether plaintiff's separation was involuntary; moreover, the record reflected that plaintiff did not want to remain on active duty. *Id.* Accordingly, the Board denied plaintiff's application. *See* AR at 18.

Plaintiff filed a complaint in the United States Court of Federal Claims on September 13, 2007, seeking correction of his military records to reflect twenty-five years of service, rather than the twenty-two years that he actually served. Compl. filed Sept, 13, 2007, ¶ 8. Defendant moves to dismiss for lack of subject matter jurisdiction, contending that plaintiff failed to cite a money-mandating statute, and that plaintiff's claim is time-barred because plaintiff instituted this action in September 2007, almost one year after the six-year statute of limitations accrued on plaintiff's claim in 2000. *See* 28 U.S.C. § 2501 (2000). Alternatively, defendant moves to dismiss the case for failure to state a claim upon which relief can be granted, asserting that plaintiff has failed to prove that he is entitled to an additional three years of service under the constructive service doctrine.

## DISCUSSION

### 1. *Motion to dismiss for lack of subject matter jurisdiction*

Briefs filed by *pro se* litigants are held to a less stringent standard than formal briefs filed by attorneys. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Nevertheless, the leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of the burden to meet jurisdictional requirements. *Kelley v. Sec'y, United States Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987). Although plaintiff's filings show that he has mastered the contents of his service record, his ability to marshal events and documents does not suffice to make a valid legal argument based on relevant facts.

Defendant moves to dismiss for lack of subject matter jurisdiction based on two separate and independent grounds. Once the court's subject matter jurisdiction is put into question, the burden of establishing subject matter jurisdiction falls upon the party seeking to invoke it. *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir.2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."). First, defendant points to the absence of a money-mandating statute to support plaintiff's claim. Second, defendant asserts that plaintiff's claim is time-barred by the six-year statute of limitations prescribed in 28 U.S.C. § 2501.

### 1) *Money-mandating statute*

The United States is immune from suit unless it explicitly waives its sovereign immunity. Under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), the court is authorized to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." This jurisdiction extends only to claims for money damages and must be strictly construed. *See United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). " 'The Tucker Act itself does not create a substantive cause of action [in the Court of Federal Claims]; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.' "

*Greenlee County v. United States,* 487 F.3d 871, 875 (Fed.Cir.2007) (alteration in original) (quoting *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005)). Plaintiff must demonstrate that his claim is based on a money-mandating constitutional provision, statute or regulation.

■ Plaintiff's response to defendant's motion grounds his claim on 37 U.S.C. § 204 (2000) (the "Military Pay Act"). It is well-established that the Military Pay Act is a money-mandating statute and that claims for back pay based on the Military Pay Act are within the court's jurisdiction. *Metz v. United States,* 466 F.3d 991, 998 (Fed.Cir.2006). Plaintiff pleads that he is entitled to higher retirement pay pursuant to the Board's determination to grant plaintiff relief from the non-judicial punishment, thereby invoking the jurisdiction of the Court of Federal Claims. Defendant's motion to dismiss for lack of subject matter jurisdiction is denied on this ground.[1]

2) *Statute of limitations*

■ Congress restricted the authority of the Court of Federal Claims to adjudication of those claims brought within the six-year statute of limitations. *See* 28 U.S.C. § 2501. Prior to the Supreme Court's recent confirmation in *John R. Sand & Gravel v. United States,* —— U.S. ——, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008), some decisions of the United States Court of Appeals for the Federal Circuit and Court of Federal Claims questioned whether a motion to dismiss a complaint as time-barred is brought for failure to state a claim rather than for lack of subject matter jurisdiction. It is now not subject to question that filing a claim within the six-year statute of limitations prescribed in 28 U.S.C. § 2501 is a prerequisite to the court's exercise of jurisdiction over a claim. *John R. Sand & Gravel,* 128 S.Ct. at 757 (reaffirming prior precedent under principles of *stare decisis* that Tucker Act's statute of

limitations is "jurisdictional"). Thus, if the plaintiff cannot prove that the complaint was filed within the statute of limitations contained in the Tucker Act, the complaint must be dismissed for lack of subject matter jurisdiction.

■ Plaintiff contends that his filing an application with the DOT BCMR on November 3, 2006, renders his claim timely. Plaintiff reasons that this filing tolled the court's general statute of limitations. Nevertheless, it is a canon of military-pay jurisprudence that seeking permissive administrative review does not toll the statute of limitations in the Tucker Act. *See Martinez v. United States,* 333 F.3d 1295, 1312 (Fed.Cir.2003) ("[I]t is well settled that the statute of limitations for Tucker Act claims is not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim."); *see also Brighton Village Assocs. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir. 1995) (holding that administrative challenges "did not postpone accrual of ... claims").

■ The Administrative Record reveals some confusion as to the exact date on which the claim first accrued. In his initial brief plaintiff states: "This complaint is timely. Whether the approval date for the final decision for BCMR 2000–035 is November 9, 2000, November 18, 2000, or December 20, 2000, the date of my 2007–050 application is November 3, 2006." Pl.'s Br. filed Jan. 31, 2008, at 1. Plaintiff's complaint seeks back pay allegedly owed from the date on which the 2000 Board Decision determined he was entitled to a pay upgrade as of September 1, 1999. Even assuming plaintiff's complaint could be viewed as asserting a cause of action that accrued pursuant to the Board's decision, *but see Martinez,* 333 F.3d at 1303 ("In a military discharge case, [the Federal Circuit] and the Court of Claims have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's

---

1. In order to survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff need only claim relief under a money-mandating statute. However, in order to state a claim upon which relief can be granted, plaintiff must assert any set of facts which, if proven, would give rise to the relief sought. *Bell Atl. Corp. v. Twombly,*

—— U.S. ——, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007). The fact that plaintiff has asserted a right to recovery under a money-mandating statute, does not mean that plaintiff has pleaded facts sufficient to state a claim upon which relief may be granted. This distinction is developed *infra.*

discharge.... [T]he claim for back pay is not a 'continuing claim' that accrues each time a payment would be due throughout the period that the service member would have remained on active duty."), plaintiff's claim would have accrued, at the latest, by December 21, 2000, when a copy of the 2000 Board Decision was mailed to him. The current action was instituted when plaintiff filed his complaint, on September 13, 2007, beyond the six-year statute of limitations. That plaintiff sought review with the DOT BCMR of his claim on November 3, 2006, did not toll the statute of limitations. His action is time-barred and is subject to dismissal for lack of subject matter jurisdiction.

### 2. Motion to dismiss for failure to state a claim

Defendant alternatively moved to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), contending that, the Military Pay Act does not provide the relief sought by plaintiff. While plaintiff has not established jurisdiction to hear his case, in the interest of thoroughness, the court will provide an alternative ruling.

The court holds plaintiff proceeding *pro se* to a less stringent standard than members of the bar; yet, he must assert facts which, if proven, state a claim upon which relief can be granted. *Hughes,* 449 U.S. at 10, 101 S.Ct. 173; *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Kelley,* 812 F.2d at 1380 (agreeing that "leniency with respect to mere formalities should be extended to a *pro se* party"). Although the Court of Claims approved of straining the court's "proper role in adversary proceedings to the limit, [to search the] record to see if [a *pro se*] plaintiff has a cause of action somewhere displayed," *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969), "[t]he fact that [a plaintiff] acted *pro se* in the drafting of his complaint [while] explain[ing] its ambiguities, ... does not excuse its failures, if such there be." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir. 1995).

In *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the United States Supreme Court clarified the standard enunciated in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), with respect to what a plaintiff must plead to survive a RCFC 12(b)(6) motion to dismiss for failure to state a claim.[2] The Supreme Court circumscribed the standard, stating: " '[A]ny statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings.' " *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 n. 4 (Fed. Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1968). Plaintiff's factual allegations need not be "detailed," but they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 127 S.Ct. at 1964–65 (internal citation omitted).

The Military Pay Act "provides that a member of a uniformed service who is on active duty is 'entitled to the basic pay of the pay grade to which assigned.' " *Metz,* 466 F.3d at 998 (quoting 37 U.S.C. § 204(a)). The Federal Circuit held in *Metz* that "a plaintiff ... must assert and ultimately establish that his separation was involuntary in order to fit within the scope of, and take advantage of, the money-mandating status of [the Military Pay Act] or else his claim falls for failure to state a claim upon which relief can be granted." *Id.* at 998. Once the Court of Federal Claims' jurisdiction is established by citing the requisite money-mandating statute, a plaintiff still must allege facts which, if proven, would give rise to relief under that statute. *Fisher v. United States,* 402 F.3d 1167, 1175–76 (Fed.Cir.2005). If a plaintiff fails to allege facts sufficient for recovery, then the plaintiff has failed to state a claim.

 Plaintiff bases his right to recovery pursuant to the Military Pay Act on the constructive service doctrine. *See* Pl.'s Br.

---

**2.** *Twombly* discredits not only *Conley,* but the venerable *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), insofar as *Scheuer* relied on *Conley's* formulation of the standard and stood for the proposition that the complaint should not be dismissed unless plaintiff can prove no set of facts which would entitle him to recover.

filed Jan. 31, 2008, at 3–5. The constructive service doctrine embodies the concept that "members of the military who have been improperly discharged are treated as having continued to serve until they are properly discharged; they are therefore entitled to back pay and allowances for that period of constructive service." *Christian v. United States*, 337 F.3d 1338, 1341–42 (Fed.Cir. 2003). In order to recover under the constructive service doctrine, plaintiff must prove that he was "improperly separated from service." *Id.* at 1347. A servicemember cannot invoke the constructive service doctrine if he voluntarily retires from the military. *See Smith v. Sec'y of Army*, 384 F.3d 1288, 1295 (Fed.Cir.2004) ("[I]f the service member's separation from the service is voluntary, such as pursuant to a voluntary retirement, the Military Pay Act does not impose on the government any continuing obligation to pay the service member."). Furthermore, a decision to retire is not rendered involuntary merely because the servicemember is faced with an undesirable choice. *Cruz v. Dep't of Navy*, 934 F.2d 1240, 1245 (Fed.Cir.1991) ("This court has repeatedly held that the imminence of a less desirable alternative does not render involuntary the choice made.").

■ Plaintiff volunteered for retirement, albeit under unusual circumstances. He requested to retire because his service was approaching the maximum years allowed at his pay grade without advancement (High Year Tenure), he was approaching the end of his enlistment, he could not reenlist without a waiver, and he would not be able to compete for advancement for twenty-four months after the non-judicial punishment. The court recognizes that plaintiff was in a situation where he had to retire in order to preserve his retirement benefits.

Review of the Administrative Record convinces the court that plaintiff's retirement cannot be characterized as involuntary. The 2007 Board Decision noted that the Coast Guard offered to return plaintiff to active duty. Plaintiff did not accept the position because it was in Nashville, Tennessee, not in Atlanta, Georgia. *See* A.R. at 32. These circumstances demonstrate voluntary retire-ment and an offer to be reinstated after retirement that was turned down by plaintiff. Similar to the situation in *Cruz*, that plaintiff's choice was undesirable does not render his decision to retire involuntary. Because plaintiff voluntarily retired, he cannot contend that he was illegally or improperly separated, and the constructive service doctrine is not available to extend his service. The complaint fails to state a claim under the Military Pay Act, even if plaintiff's claim were not time-barred.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion is granted, and the Clerk of the Court shall dismiss the complaint pursuant to RCFC 12(b)(1) without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

