Ricardo Antonio SHAW, Sr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–235 C.

United States Court of Federal Claims.

Aug. 4, 2011.

## ORDER

JAMES F. MEROW, Senior Judge.

On June 4, 1998, then Sergeant Ricardo Antonio Shaw, Sr., was discharged from the U.S. Army after having completed thirteen years, seven months and twenty-two days of active service. Because the discharge stemmed from two instances of misconduct on his part, it was issued as a general discharge under honorable conditions. Mr. Shaw then successfully petitioned the Army Discharge Review Board, and the discharge was, for equitable reasons, upgraded to honorable based upon Secretarial Authority. *See* 10 U.S.C. § 1553.[1]

■ In the prior January 29, 2010 Order filed in this matter it was concluded that because plaintiff had not filed suit within the six years following his discharge from military service, his only viable pleaded claim was for correction of the military records to show entitlement to disability retirement or separation in June of 1998, instead of the discharge he received. This is because, unlike claims for unlawful discharges which ac-

crue on date of discharge, a claim for disability compensation generally does not accrue until an appropriate military board denies the claim in a final decision or refuses to hear the claim. *See Chambers v. United States*, 417 F.3d 1218, 1224 (Fed.Cir.2005). Here, the July 29, 2010 decision by the Army Board for the Correction of Military Records ("ABCMR") denying Mr. Shaw's claim for disability status, comprises the final appropriate board decision required to accrue the claim.

■ The parties have filed motions for judgment on the administrative record which discuss whether the ABCMR decision denying Mr. Shaw's claims for disability compensation, commencing on his separation from military service, is "arbitrary, capricious, unsupported by substantial evidence or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed.Cir.1998). This issue must be resolved by reviewing the administrative record before the ABCMR. *Metz v. United States*, 466 F.3d 991, 998 (Fed.Cir. 2006). Matters not presented to the ABCMR are considered to be waived. *Id.* In his papers filed in this matter, Mr. Shaw is critical of the Army's treatment of the two misconduct issues which prompted his 1998 discharge. However, any question concerning the validity of his discharge, other than whether he was then entitled to disability status, is barred by 28 U.S.C. § 2501. *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir.2003).

Disability status requires a determination that a service member "is unfit to perform the duties of the member's office, grade, rank or rating because of physical disability." 10 U.S.C. § 1201(a).

■ Accordingly, the relevant question is whether the record evidence before the ABCMR is insufficient to find that then Sgt. Shaw, upon his discharge in 1998, was medically/physically unfit to perform the duties of his office, grade, rank, or rating.

On October 2, 1997, a Medical Board expressed the opinion that Sgt. Shaw's "medi-

---

**1.** Military discharges characterize service as honorable, or general (under honorable conditions or under other than honorable conditions). *See* *Thomas v. United States*, 47 Fed.Cl. 560, 579 n. 5 (2000); *Gay v. United States*, 93 Fed.Cl. 681 (2010).

cal condition [chronic headaches, vertigo] interferes with the reasonable performance of assigned duties." (Administrative Record (AR) at 292.) The Board referred the matter to the "U.S. Army Reviewing Authority for fitness for duty determination." (*Id.*) On March 11, 1998, a "FOLLOW–UP EVALUATION" by the Neurology Clinic, Naval Medical Center, Portsmouth, VA documented Sgt. Shaw's condition as "stable with adequate control of migraine sx's [symptoms] some residual vertigo." (AR at 637.) On March 13, 1998, a physician at Ft. Eustis, VA examined Sgt. Shaw and the Report of Medical Examination stated, "Migraine headaches Arterial HTN [hypertension] under control." (AR at 469.)

On March 3, 1998, an administrative separation board determined that one of the two instances of Sgt. Shaw's misconduct comprised a serious offense which, after further processing, resulted in his discharge on June 4, 1998. (AR at 87, 124, 126.)

Commencing on October 13, 1998, Mr. Shaw sought outpatient treatment at the Department of Veterans Affairs ("VA"), West Haven, CT facility. (AR at 915.) On October 20, 1998, Mr. Shaw was diagnosed with post-traumatic stress disorder ("PTSD"). (AR at 916.) A March 28, 2002 Department of Veterans Affairs decision, awarded Mr. Shaw a 70% service connected disability rating for PTSD with an effective date of October 13, 1998, when Mr. Shaw first sought treatment. The 2002 VA decision also noted that Mr. Shaw had initially been assigned a 10% rating for migraine headaches and a 10% rating for hypertension. (AR at 917–18.)

For his record correction claims, Mr. Shaw relies on the October 2, 1997 Medical Board referral for a fitness for duty determination, which was apparently still pending when he was discharged for misconduct. He also relies on the VA's subsequent disability ratings, particularly that for PTSD.

The "DISCUSSION and CONCLUSIONS" section of the July 29, 2010 ABCMR decision discounts reliance on the Medical Board referral as support for Mr. Shaw's claim that he was unfit as follows:

3. There is no evidence in his records that shows he was physically unfit at the time of his discharge. A Soldier is considered unfit when the evidence establishes that the Soldier is unable to reasonably perform the duties of his or her office, grade, rank, or rating.

4. In the applicant's case, his multiple reenlistments, completion of various training courses, and NCO Evaluation Reports clearly show he passed all of his APFT's since 1990, met the height and weight standards, was rated successful or among the best with superior potential, and he was fully able to perform the duties of his grade and/or MOS.

5. The available record shows that the applicant had been followed in the Neurology clinic at Naval Medical Center Portsmouth in 1996–1997 for headaches and intermittent episodes of vertigo. There are conflicting documents in the record regarding the applicant's profile the last half of 1997. One document is a temporary profile from 16 June 1997 to 16 December 1997. The other is a permanent profile dated "31" June 1997. Both profiles are for migraine headache, but the "permanent" profile does not contain the patient's name and has no numerical assignment in the PULHES. It is also not cosigned by a second physician. It contains the note "permanent profile pending findings of medical board," but there is nothing about a board in the next six months but clinic notes indicate that he was tried on a variety of medications and by December 1997 his condition was characterized as stable with adequate control of migraine symptoms with some residual vertigo.

6. The available medical records were provided by the applicant. They do not appear to be complete. However, the available records show that after preparing a temporary profile, a Navy neurologist either decided to refer the applicant for a medical board or he was led to believe that the Army was planing a medical board. This apparent referral by the Navy Medical Board for a fitness for duty review by the Army was overcome by events in that the available medical records document medical control of the applicant's mi-

graines by December of 1997. With control of his migraines, he was no longer unfit by reason of migraines. There is no medical evidence available to show he was ever placed on a profile for his hypertension, and thus no evidence to show he was unfit to perform his duties because of untreatable hypertension.

(AR at 871–72.)

The ABCMR decision also rejected reliance on the subsequent VA ratings as support for Mr. Shaw's claim that he was unfit when he was discharged for misconduct as follows:

10. The applicant also believes he should receive a medical discharge or retirement because the VA granted him service-connected disability compensation for PTSD, migraines, and hypertension. However, an award of a rating by another agency does not establish error by the Army. Operating under different laws and their own policies, the VA does not have the authority or the responsibility for determining medical unfitness for military service. The VA may award ratings because of a medical condition related to service (service connected) and for conditions that affects the individual's *civilian employability*. A disability rating assigned by the Army is based on the level of disability at the time of the Soldier's separation and is based on conditions that render the Soldier unfit to perform his duties.

11. Apparently, his first VA rating was 10% for migraine headaches and 10% for hypertension. This correlates with his separation physical exam of March 1998. There is nothing in the VA decision that would indicate that the applicant was "unfit" (should have had an MEB/PEB) at the time of his separation.

11. There is no indication in the medical records that the applicant fell below retention standards once his migraines were controlled by medication. The Navy references to a board or fitness for duty evaluation for migraines were prior to the December 1997 note that indicated his mi-

graines were stable and controlled by medication.

(AR at 873.)

■ It is well established that a reviewing court will not disturb a ABCMR decision unless it is arbitrary, capricious, contrary to law or unsupported by substantial evidence. *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed.Cir.2010); *Chambers*, 417 F.3d at 1227.

The ABCMR's decision is not arbitrary, capricious, or contrary to law, and it is supported by the record evidence. The only condition which was considered to impact then Sgt. Shaw's ability to perform his duties was the migraine headaches, but this condition was under control well before his discharge date of June 4, 1998. (AR at 469, 637.) Hypertension was never proposed as an unfitting condition and, in any event, was also under control as of then Sgt. Shaw's discharge date. (AR at 469.) The ABCMR decision that post-discharge VA disability ratings do not control military disability separation or retirement determinations is not contrary to law. *See Bennett v. United States*, 200 Ct.Cl. 635, 643 (1973); *Childers v. United States*, 81 Fed.Cl. 693, 715 (2008). However, Mr. Shaw's initial VA ratings of 10% for migraine headaches and 10% for hypertension support the "under control" determination of then Sgt. Shaw's last military medical examination in March 1998, just prior to his discharge. (AR at 469.) There is no mention of PTSD in Sgt. Shaw's military records and the subsequent VA diagnosis of PTSD dates back only to October 13, 1998. (AR at 917–18.) The ABCMR's conclusion that there is insufficient evidence of PTSD prior to then Sgt. Shaw's discharge in June of 1998, is supported by the record.

In the circumstances present, it cannot be concluded that the ABCMR decision is arbitrary, capricious, contrary to law or unsupported by substantial evidence. Accordingly, it is **ORDERED** that plaintiff's claim for disability separation or retirement is **DENIED** and final judgment shall be entered **DISMISSING** plaintiff's Complaint.