NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID R. SMITH,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2014-5090

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00094-PEC, Chief Judge Patricia E. Campbell-Smith.

---

Decided: May 26, 2015

---

PHILLIP LEON DAVIDSON, Law Office of Phillip L. Davidson, Nashville, TN, for plaintiff-appellant.

DOUGLAS GLENN EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; BRYCE G. POOLE, Air Force Civil Litigation, United States Air Force, Joint Base Andrews, MD.

_____

Before NEWMAN, MOORE, and TARANTO, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Lieutenant Colonel David R. Smith appeals a decision of the United States Court of Federal Claims, *Smith v. United States*, 114 Fed. Cl. 691 (2014), sustaining the government's position that Lt. Col. Smith is not entitled to restoration to a position with the Active Guard Reserve ("AGR"). To prevail on appeal, Lt. Col. Smith must establish that the court's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006); *Smith*, 114 Fed. Cl. at 700.

## BACKGROUND

From 1993 to February 2002, Smith served with the Tennessee Air National Guard as a "traditional" guardsman in the118th Air Wing. In February 2002 he was selected for a position in the AGR. AGR personnel serve full-time. Guardsmen in this status serve a probationary period of six years, and then obtain "retention (career) status and shall require subsequent management under a career program." Air National Guard Instruction ("ANGI") 36-101 §2.2.1.1. A career management program is "a program that may afford individuals the opportunity to achieve upward mobility consistent with manpower constraints and the needs of the Air National Guard." ANGI 36-101 §1.1.

The Air National Guard Instructions provide that "career retention and advancement" is "dependent on existing force requirements and the needs of the unit, State, and Air National Guard." ANGI 36-101 §2.2.1.2. Further, "AGR personnel are counted against authorized ANG [Air National Guard] end-strength for Airmen on

full-time National Guard duty as authorized by Congress. ANGI 36-101 §2.2.2 (citing 10 U.S.C. §115).

"Additionally, AGR personnel are counted against congressional authorizations for the controlled grades of E-8 [senior master sergeant], E-9 [chief master sergeant], O-4 [major], O-5 [lieutenant colonel], and O-6 [colonel]." *Id.* (citing 10 U.S.C. §§1201, 12012). These "Congressionally mandated end-strength authorizations" are known as "controlled grade ceilings." ANGI 36-101 (glossary of terms). "Assignment or promotion to these controlled grades cannot exceed the annually established military duty end-strength or grade ceilings." ANGI 36-101 §13.3. The National Guard Bureau "is responsible for allocating controlled grades" among the states, which "must adhere to their controlled grade limits." *Id.* §§13.3.1, 13.3.2.

Then-Major Smith's February 2002 selection for an AGR position was for a four-year tour in the Tennessee Air National Guard on full-time active duty as a Deputy Commander of the 45th Civil Support Team, Weapons of Mass Destruction unit. In 2006, a unit Commander AGR position became available in the 45th Civil Support Team, which was limited to a three or four-year term. Relying on the declaration of Terry M. Haston, the Adjutant General for the Tennessee National Guard, the Court of Federal Claims found that "[a]s a matter of policy, the position of unit Commander is limited in term to either a three or four-year term," which "allows command to move multiple officers through this position of leadership." *Smith*, 114 Fed. Cl. at 697. Adjutant General Haston stated in his declaration that Smith "was counseled that the commander's position . . . is term-limited as a matter of policy . . . and the Tennessee Air National Guard did not have the additional AGR structure to place him back in the Air Guard at the expiration of his term of command."

After successfully pursuing the position, in about October 2006 Smith began service as Commander of the 45th Civil Support Team, Weapons of Mass Destruction unit in a three to four-year tour. In December 2006 Smith was promoted to the rank of Lieutenant Colonel, and in February 2008, after serving six years in the AGR, Smith attained career status under ANGI 36-101.

In August 2009 the Tennessee Air National Guard notified Smith that his command position would soon be rotated to a new commander, and he began to look for other opportunities to continue his AGR service. Smith decided to pursue attendance at the Naval War College for one year on active duty, pursuant to 10 U.S.C. §12301(d). Smith's orders permitted him to maintain his AGR status in the 45th Civil Support Team until July 5, 2010, at which time Smith's AGR status ended. On July 6, 2010, Smith entered the one-year program at the Naval War College, from which he graduated in June 2011.

Smith sought to resume an AGR position, but he was notified by the Tennessee Air National Guard that his former position was term-limited and had ended, and that he did not have restoration rights. He was not selected for any other AGR positions. Meanwhile, Smith obtained a full-time temporary position as an Intelligence Operations Specialist, serving from July 5, 2011 to January 14, 2012. This was not an AGR position and, when this position ended, Smith returned to his initial status as a part-time traditional guardsman. The government, citing Adjutant General Haston's declaration in the Court of Federal Claims, states that the "Tennessee ANG has stated that it will consider LTC Smith in the future for a full-time AGR position in his grade and specialty if one becomes available." U.S. Br. 11.

Smith cites four sections of the ANGI 36-101 to support his contention that he is entitled to restoration in the AGR.

### *ANGI 36-101 §2.8.3*

ANGI 36-101 §2.8.3 is the core provision specifying restoration rights of AGR personnel:

> §2.8.3  AGR personnel who enter ANG Title 10 Statutory Tour, assigned to the NGB [National Guard Bureau] UMB [Unit Manning Document] (e.g. Title 10 U.S.C., Sections 10211, 10305, 12402 and 12310) have restoration rights not to exceed five years, to the State from which they entered their initial Statutory Tour.  Individuals will not be restored to AGR status solely to gain entitlement to a new period of restoration rights.  Exceptions to this policy will not be considered.  Each AGR Airman who enters an ANG [Air National Guard] Title 10 Statutory Tour must be informed in writing and acknowledge such notice that the individual is entitled to revert to the same military grade held prior to the Statutory Tour assignment. . . .

The Court of Federal Claims held that the restoration rights provided in §2.8.3 do not apply to Smith.  ANGI 36-101 glossary of terms defines "Statutory Tour" as a "Title 10 Section 12310 active duty tour attached to NGB [National Guard Bureau] IAW [in accordance with] ANGI 36-6, *ANG Statutory Tour Program Policies and Procedures*."  The court correctly observed that, by its terms, §2.8.3 restoration rights apply to AGR personnel who enter a Statutory Tour as defined in the glossary of terms.

The court observed that the order authorizing Smith's attendance at the Naval War College described the "Type of Duty/Authority" as "School Professional Military Education (PME)" pursuant to 10 USC §12301(d) and ANGI 36-2001.  *Smith*, 114 Fed. Cl. at 701.  These references support the government's assertion that Smith's attendance at the Naval War College was not a Statutory Tour as set forth in ANGI 36-101 §2.8.3.

Further, the Statutory Tour Program Policies and Procedures 4, ANGI 36-6, requires service members selected for a Statutory Tour to initial six paragraphs on the Form 830, Statutory Tour Statement of Understanding. Smith does not allege he was provided with or initialed this form, and the Court of Federal Claims found no such form in the record. The court also observed that the order assigning Smith to attend the Naval War College does not suggest that Smith's attendance would be a Statutory Tour. "Rather, it refers to the instructions governing professional military education, ANGI 36-2301." *Smith*, 114 Fed. Cl. at 702.

### *ANGI 36-101 §7.8.1*

Lt. Col. Smith also challenges the determination that ANGI 36-101 §7.8.1 does not apply to him. Section 7.8.1 states that "AGRs called or ordered to Title 10 federal active duty . . . supporting Active Duty requirements for operations/missions/exercises/training (Title 10 U.S.C. 12301(d), 12302, 12304, or 10147) will not be terminated from their Title 32 U.S.C. Section 502(f) orders." Smith's argument appears to be that he was terminated from AGR orders, in violation of §7.8.1, by not being restored after his tour at the Naval War College.

Smith served as an AGR pursuant to 32 U.S.C. §502(f). The Court of Federal Claims found that Smith was separated from AGR service on July 5, 2010—before beginning his tour of duty at the Naval War College on July 6, 2010. *Smith*, 114 Fed. Cl. at 703. The record contains Smith's Tennessee Air National Guard orders which state that his AGR position was pursuant to §502(f) and ended on July 5, 2010, and his orders stating that his attendance at the Naval War College is "Professional Military Education" pursuant to 10 U.S.C. §12301(d) and ANGI 36-2001.

In addition, Smith's "Certificate of Release or Discharge from Active Duty" states that "Member served on

active duty in support of an AGR tour program according to 32 USC 502(f) & ANGI 36-101 from (1-FEB-2002 – 5-JULY-2010)." No error has been shown in the court's finding that Smith was not an AGR when he began his tour at the Naval War College. That finding is fully supported by the record. Moreover, Smith does not contest the finding that his AGR tour prior to attending Naval War College was term-limited.

### *ANGI 36-101 §2.2.1.1*

Lt. Col. Smith also challenges the determination that his "career status" under ANGI 36-101 §2.2.1.1 did not provide assurance of continued AGR employment.

Section 2.2.1.1 states that "Continuation beyond the initial probationary period in service in AGR status for more than six years constitutes retention (career status) and shall require subsequent management under a career program." Section 2.2.1.2 further states that "career retention and advancement will be dependent on existing force requirements and the needs of the unit, State, and Air National Guard." Section 9.9.1 provides:

> Airmen granted career status (successive tour) shall be administered with the understanding that their service may lead to a military retirement after attaining the required years of [total active federal military service]. However, career status does not guarantee continuation to 20 years of [total active federal military service] and an [active duty] retirement. Continuation to 20 years of [total active federal military service] and beyond is contingent on individual performance, career progression, mission requirements, force management and the needs of the unit, State, and Air National Guard.

Section 1.1 of ANGI 36-101 also explains that continued employment in AGR status is not guaranteed, stating

"a career management program is defined as a program that *may* afford individuals the opportunity to achieve upward mobility consistent with manpower constraints and the needs of the Air National Guard." The conclusion that guaranteed employment is not provided under the rules is further supported by statutory limitations on manpower and controlled grade ceilings as set by Congress, which cannot be exceeded. *See* ANGI 36-101 §§2.2.1.2, 2.2.2, 13.3.

### *ANGI 36-101 §7.5*

Lt. Col. Smith also appeals the denial of his motion to alter or amend the judgment pursuant to RCFC 59(e). Smith argued that, pursuant to ANGI 36-101 §7.5, his AGR status should have been preserved while attending the Naval War College. Section 7.5 states:

> **Training and Developmental Education (DE)**. AGRs will be afforded the same opportunity for enhancing their military knowledge and career as is presently available to all other ANG Airmen. AGRs attend all service schools in AGR status. Orders will indicate the fund citation for travel and per diem provided under the school quota authorization.

The Court of Federal Claims observed that Smith's AGR status was "extended until the start date of his Naval War College duty in July 2010, during which time Lt. Col. Smith assisted with the transition to the new unit commander." We discern no error in the determination that when Smith began his tour at the Naval War College he was not in AGR status. Thus, the §7.5 provision that "AGRs attend all service schools in AGR status" does not apply.

CONCLUSION

On review of the statute and regulations, and the position of the government, we conclude that the ruling of the Court of Federal Claims is in accordance with law.

**AFFIRMED**

Each party shall bear its costs.