**Billy D. HARPER, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 11–45C.**

United States Court of Federal Claims.

April 2, 2012.

Billy D. Harper, Old Hickory, TN, pro se.

J. Hunter Bennett, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for defendant. LCDR Michael M. O'Regan, JAGC, Department of the Navy, of counsel.

## *MEMORANDUM OPINION AND ORDER*

### CHRISTINE O.C. MILLER, Judge.

This case is before the court after supplemental briefing on defendant's motion to dismiss for failure to state a claim upon which this court can grant relief and subsequent motion for judgment on the administrative record. The issue for decision is whether, based on the facts pleaded in the complaint, plaintiff's discharge from the United States Marine Corps (the "Marine Corps") was lawful, thus rendering him ineligible for reenlistment in the Marine Corps and thereby removing him from the purview of the Military

1. Section 912a provides, in relevant part:

 (a) Any person subject to this chapter who wrongfully uses, possesses, manufactures, [or] distributes ... a substance described in subsection (b) shall be punished as a court-martial may direct.
 (b) The substances referred to in subsection (a) are the following:
 (1) Opium, heroin, cocaine....

2. The administrative record does not contain a "Pretrial Agreement," although defendant submitted the October 30, 2007 Pretrial Agreement

Pay Act, 37 U.S.C. § 204 (2006). Supplemental briefing followed the filing of the administrative record, and the parties addressed what became plaintiff's challenge to a correction board's denial of relief. Thereafter, defendant moved for judgment on the administrative record, and plaintiff filed another supplemental brief in order to respond to defendant's motion based on the administrative record. Argument is deemed unnecessary.

## BACKGROUND AND FACTS

Until the administrative record was filed, plaintiff's complaint was the source of factual allegations, including the attachments to the parties' first round of briefs. Billy D. Harper ("plaintiff") enlisted in the Marine Corps on October 16, 2000. *See* Compl. filed Jan. 14, 2011, ¶ III. Prior to deploying to Iraq, in February 2007, plaintiff failed a urinalysis by testing positive for cocaine. *See* Compl. ¶¶ V–VI. On March 16, 2007, special court-martial charges were preferred against plaintiff for his alleged violation of Article 112a, Uniform Code of Military Justice ("UCMJ"). *See* Compl. ¶ VI; *see* 10 U.S.C. § 912a (2006).[1] Rather than face a court martial, on October 30, 2007, plaintiff elected to enter into a "Pretrial Agreement,"[2] whereby plaintiff agreed to plead guilty at Commanding Officer's Nonjudicial Punishment ("NJP") to violating section 912a and to waive his right to an administrative separation board in exchange for the withdrawal of the preferred court-martial charge. *See* Compl. ¶ VII. The NJP was conducted on November 14, 2007, and plaintiff was found guilty by his commanding officer of wrongful use of cocaine and reduced to the rank of corporal.[3] *See* Compl. ¶ IX.

with its final brief. *See* Def.'s Br. filed Jan. 17, 2012, Ex. 1. Plaintiff's complaint identified this document by title and date. *See* Compl. ¶ VII.

3. It does not appear that plaintiff actually pleaded guilty at the NJP. By the October 30, 2007 Pretrial Agreement, *see supra* note 2, plaintiff "agreed to plead guilty." Compl. ¶ VII. And in the NJP proceedings he acknowledged his consent to NJP. AR 17. The Complaint alleges that plaintiff "maintained his innocence in contravention of the PTA [the Pretrial Agreement] by making the comment, " 'I don't know how it [the

On January 3, 2008, plaintiff was informed that he was to be administratively separated from the Marine Corps as the result of his violation of section 912a. *See* Compl. ¶ X. A mere seven days later, plaintiff again tested positive for illicit drug use, and on January 23, 2008, special court-martial charges again were preferred against plaintiff. *See* Compl. ¶¶ XI–XII. As a result of these charges, the administrative separation processing was postponed. The court-martial charges were withdrawn in April 2008, because the Marine Corps had decided to investigate plaintiff more thoroughly, thus introducing the possibility of bringing additional court-martial charges against him. *See* Compl. ¶ XIII. On September 23, 2008, special court-martial charges stemming from the second drug incident, as well as a driving under the influence offense and undisclosed civilian offenses, were preferred against plaintiff. *See* Compl. ¶¶ XV, XVII.

Subsequent to this reinstitution of court-martial charges against plaintiff, his enlistment term expired. *See* Compl. ¶ XX. Accordingly, plaintiff was placed on a "legal hold" status pursuant to Marine Corps Order ("MCO") P1900.16F ¶ 1008(1)(b)(1) (June 6, 2007), pending resolution of the court martial.[4] *See* Compl. ¶ XVII. On January 26, 2009, plaintiff was acquitted of all charges and removed from legal hold. *See* Compl. ¶¶ XVIII, XX. Plaintiff was discharged summarily from the Marine Corps on February 26, 2009. Affidavit of Billy D. Harper, July 12, 2011, Pl.'s Br. filed July 13, 2006, App. ¶ 2.

According to plaintiff's "Certificate of Release or Discharge from Active Duty" (plaintiff's "DD–214"), plaintiff received an honorable discharge from the Marine Corps. Def.'s Br. filed May 20, 2011, Att. A, at 1. Plaintiff's DD–214 states that plaintiff was separated pursuant to MCO P1900.16F ¶ 1005 (titled "DISCHARGE FOR EXPIRATION OF ENLISTMENT OR FULFILLMENT OF SERVICE OBLIGATION"). Accordingly, the DD–214 shows that the "Reason for Separation" was "NON–RETENTION ON ACTIVE DUTY" and lists a "Separation Code" of "JGH2" indicating "involuntary discharge (no further service)." *See* MCO P1900.16F, Def.'s Br. filed May 20, 2011, Att. at 1; Compl. ¶ XXI. Finally, plaintiff's DD–214 lists the "Reentry Code" of "RE–4B," thereby indicating that "there is a military or civil record of in-service illegal drug involvement and there is no potential for further service." *See id.*

On May 16, 2009, plaintiff attempted to remove all notations regarding his violation of section 912a from his official file and to revise his DD–214 "Reentry Code" by submitting an application for relief to the Board for Correction of Naval Records (the "BCNR"). *See* Compl. ¶ XXVIII. This request for relief was denied on August 4, 2010. *See id.* ¶ XXIX. Following the denial of his application to the BCNR, plaintiff filed suit in the United States Court of Federal Claims on January 14, 2011, requesting that his administrative separation be set aside and that he be reinstated in the Marine Corps with all appropriate back pay and allowances.

After initial briefing was completed on August 8, 2011, the court was at a loss to understand exactly what relief plaintiff was seeking. Objecting that plaintiff was making arguments that were not based on allegations in his complaint, defendant obviously was responding to evolving allegations and arguments. Whether plaintiff was seeking review of the BCNR's decision had not been established, and no administrative record was on file.

---

cocaine] got in my system.' " Compl. ¶ IX; *see* AR 17. His consent to NJP follows that entry. AR 17.

4. MCO P1900.16F ¶ 1008 states, in relevant part:

1008. RETENTION BEYOND DATE DUE FOR SEPARATION
1. A Marine may be retained for the Convenience of the Government beyond the established separation date in the following cases:

. . . .
b. Disciplinary Status
(1) Those personnel to whom jurisdiction has attached by commencement of action with a view to trial, as by apprehension, arrest, confinement, or filing of charges, before release from active duty, may be retained on active duty. Once jurisdiction has been so attached, it continues for purposes of trial, sentence, and punishment. . . .
MCO P1900.16F ¶ 2008(1)(b)(1).

The court ordered defendant to file the administrative record and plaintiff to file a supplemental brief, to which defendant was to respond, addressing the following:

> By January 2, 2012, plaintiff shall file a supplemental brief addressing two issues: first, whether and to what extent plaintiff is appealing the action of the BCNR; and second, with specific references to documents included in the Administrative Record or any applicable statutes or regulations, the exact nature of plaintiff's challenge to the Reentry Code provided on plaintiff's DD–214 (for example, is plaintiff stating that the code reflects the results of non-judicial punishment that he did not accept? or that an applicable regulation has been violated because the code does not operate as a basis for barring reenlistment? or that an applicable regulation disallows any reference to the subject of non-judicial proceedings that plaintiff has disavowed? or that the conviction that stands due to failure to appeal may be the basis for the code, but that an applicable regulation disallows reference to it? or that reenlistment is a matter of right, such that plaintiff had a right to reenlist? or that plaintiff otherwise qualifies under an applicable regulation for reenlistment? or that the code cannot operate as an effective bar?).

Order entered Nov. 17, 2011, ¶ 4 (amending order entered Nov. 2, 2011).

Up to November 17, 2001, plaintiff was represented by counsel. After the court allowed counsel to withdraw, *see id.*, plaintiff was afforded thirty days to obtain new counsel and an additional two weeks to file his supplemental brief. Defendant filed the administrative record on December 1, 2011, and plaintiff proceeded *pro se* in filing his supplemental brief on December 28, 2011. Defendant filed its supplemental reply and moved for judgment on the administrative record on January 17, 2012. The court by order entered on February 9, 2012, directed plaintiff to file a response because, although defendant asserted no new arguments in its January 17, 2011 motion, this motion contemplated a response. *See* RCFC 52.1(c). Plaintiff's final brief was filed on March 16, 2012.

## DISCUSSION

■ The complaint appeared to support two potential claims: a Military Pay Act, 37 U.S.C. § 204, claim for money that would be owed to him had he been allowed to reenlist following his acquittal at the court martial, and a Fifth Amendment Due Process claim that he was denied an appropriate hearing upon being discharged because of "stigmatizing information."[5] *See* Compl. ¶¶ II, XXVII. Defendant initially moved to dismiss both claims pursuant to RCFC 12(b)(6) for failure to state a claim that would entitle plaintiff to relief. Defendant's reply to plaintiff's supplemental brief—filed in support of its motion to dismiss and its motion for judgment upon the administrative record pursuant to RCFC 52. 1(c)—reiterated its earlier arguments against the backdrop of the administrative record.

### I. *Standards*

■ Defendant moved pursuant to RCFC 12(b)(6) to dismiss plaintiff's complaint for failure to state claims upon which relief can be granted. *See* RCFC 12(b)(6). "The purpose of [RCFC 12(b)(6) ] ... is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail...." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993); *see also Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court's task in considering a motion to dismiss for failure to

---

**5.** It is difficult to discern what authority plaintiff is attempting to invoke in this case. Plaintiff appears to cite to § 204 for purposes of establishing jurisdiction, but then does not cite to it again in his complaint. *See* Compl. ¶ II. As noted by defendant, plaintiff seems to have relied on the Fifth Amendment Due Process clause for his claim for back pay and reinstatement, as well as his request for a separation hearing. Def.'s Mot. filed May 20, 2011, at 7 n. 2. However, this court cannot entertain a claim for payment with such a justification because the Fifth Amendment Due Process clause is not a money-mandating provision falling under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006). *James v. Caldera*, 159 F.3d 573, 581 (Fed.Cir.1998). Defendant addressed this claim under the Military Pay Act.

state a claim is to "determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed.Cir.2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "A dismissal for failure to state a claim ... is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995).

In resolving a RCFC 12(b)(6) motion, the court must assess whether plaintiff's complaint adequately states a claim for relief under the implicated statute and regulations and whether plaintiff has made "allegations plausibly suggesting (not merely consistent with)" entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiff's factual allegations need not be "detailed," but they "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the [counterclaims] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). A complaint will survive a motion to dismiss for failure to state a claim if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted) (internal quotation marks omitted); *accord Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed.Cir.2009); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356–57 (Fed.Cir.2007). Therefore, after disposing of any conclusory or formulaic components of the complaint, this court must determine whether the remaining factual obligations "plausibly suggest an entitlement to relief," *id.* at 1951. This determination requires a finding that "the complaint ... allege[s] facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed.Cir. 2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The court must "draw on its judicial experience and common sense" when determining whether or not plaintiff's entitlement to relief is plausible. *Iqbal*, 129 S.Ct. at 1950.

## II. *Plaintiff's Military Pay Act claim*

Beginning with plaintiff's first claim under authority of the Military Pay Act, plaintiff has asked this court to set aside his administrative separation, reinstate him in the Marine Corps, and award him the pay he would have received had he not been separated initially. *See* Compl. prayer for relief at 6–7. At bottom, plaintiff argues that, because his discharge was involuntary and unnecessary—presumably because plaintiff deems the NJP void and because he was acquitted at his subsequent court martial for another drug offense—he should be allowed to resume his service in the Marine Corps. *See* Pl.'s Br. filed July 13, 2011, at 8–12. This view, however, has no cognizable basis in either established law or the facts presented in this case.

▪ The Military Pay Act, 37 U.S.C. § 204, provides that a member of a uniformed service who is on active duty is entitled to pay at the pay grade to which he is assigned until he is properly separated from the service. *See Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997). Thus, "[i]n order to maintain a military discharge case in the Court of Federal Claims, an individual plaintiff 'must [have] alleged that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge.'" *Flowers v. United States*, 80 Fed.Cl. 201, 215 (2008) (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003)). According to the United States Court of Appeals for the Federal Circuit, this requires a plaintiff who is not on active duty to plead and prove that his separation was unlawful in order to bring his complaint within the money-mandating scope of the Military Pay Act. *See Metz v. United States*, 466 F.3d 991, 998 (Fed.Cir.2006). If the plaintiff is unable to make this showing, then his complaint fails to state a claim upon which relief can be granted. *Id.*

▪ Plaintiff in this case has not pleaded that his discharge was unlawful. Paragraphs

XVII and XX of the complaint inform this court that plaintiff's contractual enlistment term expired while he was waiting for a resolution of the court martial. *See* Compl. ¶¶ XVII, XX. Plaintiff was still in the Marine Corps upon the resolution of the court martial due only to the "legal hold" that had been placed on him; the Marine Corps retained plaintiff in uniform so that he could be made to answer for the charges preferred against him. *See* Compl. ¶ XVII, Def.'s Br. filed Aug. 8, 2011, at 5. Once those charges were resolved, the "legal hold" was released and plaintiff was properly separated from the Marine Corps for having completed his contractual term of duty. *See* AR 97–99. It is certainly lawful for a branch of the armed services to discharge a servicemember who has reached the end of his contractual service agreement, and the fact that the Marine Corps denied plaintiff's request to reenlist similarly does not affect the legality of plaintiff's discharge.

Plaintiff seems to have focused solely on the fact that his discharge was involuntary. *See* Pl.'s Br. filed July 13, 2011, at 8; Def.'s Br. filed Aug. 8, 2011, at 2 n. 1. However, the fact that plaintiff wanted to remain a Marine is legally irrelevant in this case. The Federal Circuit has explained that "no one has a right to enlist or to reenlist in the armed forces unless specially granted one." *Dodson v. Dep't of the Army*, 988 F.2d 1199, 1208 (Fed.Cir.1993). As correctly noted by defendant, plaintiff has failed to point to a single statute, regulation, or other authority extending to him the right to reenlist. *See* Def.'s Br. filed May 20, 2011, at 8–9. Moreover, defendant cites statutory authority, 10 U.S.C. § 508(a) (2006), that specifically denies plaintiff the right to reenlist because of the finding of guilt against him at the NJP for wrongful use of cocaine. Therefore, even though plaintiff's separation was involuntary, it was not unlawful.

■ Furthermore, plaintiff has misconstrued the remedy provided by § 204. First, § 204 merely provides that a member of the armed forces is entitled to pay at the appropriate grade so long as he is still in service. Contrary to plaintiff's apparent reading of the statute, § 204 provides only that an improperly discharged servicemember " 'is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired....' " *Flowers*, 80 Fed.Cl. at 216 (quoting *Dodson*, 988 F.2d at 1208.). Plaintiff's term of enlistment expired some time in late September or October 2008, but he was properly kept in the service until February 26, 2009. *See* Compl. ¶ XVII; Def.'s Br. filed May 20, 2011, at 10. Plaintiff has not alleged that he was not paid while he was still in uniform. Rather, plaintiff seeks the payment of monies that he would have received after his enlistment period had expired provided that he been allowed to reenlist in the Marine Corps. This request is patently beyond the scope of § 204.

■ Second, plaintiff seeks reinstatement in the Marine Corps. This, too, exceeds the scope of § 204, which does not contain a grant of authority to reinstate servicemembers in the armed forces. The Court of Federal Claims lacks the authority to order reinstatement after a servicemember's enlistment term has expired. *See Dodson*, 988 F.2d at 1208. Consequently, plaintiff once again has asked for a remedy that has no statutory support and is beyond the court's powers to grant.

Defendant's motion to dismiss the § 204 claim is granted.

### III. *Plaintiff's challenge to the BCNR's decision*

Plaintiff's first supplemental brief affirmed that, indeed, he was challenging the BCNR's decision dated August 4, 2010, *see* AR 1–2, on three grounds: that his claim of innocence throughout the NJP proceeding nullified the October 30, 2007 Pretrial Agreement's guilty plea, *see supra* note 2; that upon his not-guilty plea, the NJP proceeding should have terminated; and that he was denied an effective right to appeal.[6]

---

**6.** To the extent that plaintiff has not continued to argue that his Fifth Amendment due process rights were compromised because he has a interest in being free from the taint of separation, *see* Compl. ¶ XX; *see also supra* note 5, the court notes that plaintiff's opposition did not respond

### 1. *Standard of review*

#### 1) *Judgment on the administrative record*

■ Cross-motions for judgment on the administrative record pursuant to RCFC 52.1(c) provide a procedure by which parties may seek an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum v. United States,* 404 F.3d 1346, 1356 (Fed.Cir.2005). The parties are limited to the agency record and individual statements of fact submitted under RCFC 52.1(c)(1). The court must make its findings of fact from this record as if it were conducting a trial. *Id.* at 1357. As a motion under RCFC 12(b)(6), a proceeding for judgment on the administrative record under RCFC 52.1(c) yields a judgment on the merits. Plaintiff had an opportunity to argue based on the full administrative record, and the court has addressed all of plaintiff's arguments that were untethered to the administrative record before the nature of the proceeding dawned on everyone concerned.

#### 2) *Decisions of boards for correction of military records*

■ Plaintiff challenges the decision rendered by a correction board. The court reviews such decisions under a deferential standard so as not to "disturb the decision of the [correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States,* 591 F.3d 1372, 1377 (Fed.Cir.2010) (citing *Chambers v. United States,* 417 F.3d 1218, 1227 (Fed.Cir.2005)). "This [standard of review] necessarily limits the Court of Federal Claims' review to the administrative record," except in extremely limited circumstances when the court may consider " 'extra-record' evidence." *Metz,* 466 F.3d at 998. Plaintiff's burden is to show by "cogent and clearly convincing evidence" that the decision of the correction board fails this standard. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed. Cir.1986) (citation omitted) (internal quotation marks omitted). Plaintiff also must overcome the presumption of regularity that attaches to the actions of a correction board.

to defendant's argument, so plaintiff's contention should be considered abandoned. However, the gist of plaintiff's position is considered in con-

*See Richey v. United States,* 322 F.3d 1317, 1326 (Fed.Cir.2003) (noting "the presumption of regularity that attaches to all administrative decisions" in the context of military correction board action).

■ To demonstrate that the board's decision does not meet the arbitrary and capricious standard in such cases, a plaintiff

> must show both that (a) there was a material legal error or an injustice in the proceedings of the correction board, or other entity within the military department, which led to the adverse action against him, and also (b) that there is an adequate nexus or link between the error or injustice and the adverse action.

*Id.* Where an allegedly defective performance report resulting in a failure to promote forms the basis of a claimant's suit, courts will grant the requested relief when "the presence of the defective [report] ma[kes] [the claimant's] whole record before the selection board something less than 'substantially complete and fair.' " *Id.* at 709 (quoting *Sanders v. United States,* 594 F.2d 804, 814 (Ct.Cl.1979)).

■ Finding that plaintiff "knowingly and voluntarily elected to accept non-judicial punishment," AR 1, the BCNR relied on two advisory opinions to which plaintiff responded by counsel. These advisory opinions found no support in the record for plaintiff's assertion that he either maintained his innocence or withdrew his guilty plea, *see* AR 20–23, 44–46. The administrative record reveals that (1) plaintiff's statement that he did not know how the cocaine got into his system was not a guilty plea; it was offered in response to a request whether he would like to present any extenuating or mitigating circumstances, *see* AR 17; (2) his written Pretrial Agreement, *see supra* note 2, advised him that he would be allowed to make such a statement, so he did not violate the agreement by offering the explanation; *see* Pretrial Agreement ¶ 10; (3) thereafter, plaintiff orally confirmed that he still consented to NJP, AR 17; and (4) he knowingly made a

nection with the issues that plaintiff raises on review of the BCNR decision.

decision to forego his right to appeal, *see* AR 1, 17, 21, 56.

The decision of the BCNR is supported by substantial evidence. One point, however, bears specific mention. Plaintiff makes much of the fact that the NJP Punishment Book form signed by plaintiff on November 14, 2007, required him to complete and sign Block 13 containing the statement: "Having been advised of and understanding my right of appeal, at this time I (intend) (do not intend) to file an appeal." AR 56. Plaintiff circled neither alternative. Block 13 captioned "Date of Appeal, if any[.]," bore the typed notation "N/A:" *Id.*

Plaintiff submitted to the BCNR a full copy of a typewritten document entitled "Office Hours Guide and Summary of NJP Hearing." *See* AR 15–17. The document is not signed, but plaintiff represents that the narrative explanations are his (e.g., statement that he "did not know how, it got in my system"). The document includes the following: "[y]ou are advised that you have the right to appeal this punishment to (Commanding Office, MAG–14). Your appeal must be made within a reasonable time, which is normally five working days. Following this hearing the Legal Officer will advise you more fully of this right to appeal. Do you understand? ACC: Yes." *Id.* 17.

The advisory opinion dated April 6, 2010, pointed out the obvious. Plaintiff did not appeal, nor did he disavow that he had been advised of his appeal rights. *See* AR 21. Plaintiff maintains that he never signified his intent not to appeal or had the opportunity to exercise his right within five days because the NJP Punishment Book reflected that he did not appeal as of November 14, 2007. It is plaintiff's position that the notation "N/A" in Block 13 of the NJP Punishment Book does not signify that the decision was not appealed, as the notation was entered contemporaneously with the imposition of punishment. While this case might induce the USMC to redraft forms to more accurately reflect in meaningful English what information they purport to convey (the advisory opinion says that "N/A" in blocks 13 and 15 showed that plaintiff "either did not intend to appeal or failed to exercise the right," *id.*),

the BCNR could rely on the record to find that plaintiff had elected not to and, in fact, had not appealed.

In support of his application, plaintiff submitted to the BCNR his version of a dialog with his commanding officer whereby he was informed that the NJP would not lead to his discharge. Plaintiff's wording is quoted:

It is with reservation that I also state that before accepting article 15 punishment. I was called in the office by my Commanding Officer who administered the NJP. Major Peter Brown (RET) asked me to consider accepting article 15 punishment, that he would consider not taking my rank, and that I should tell him what my punishment should be. He also stated that he would recommend a more favorable characterization of service. The only reason I accepted the article 15 punishment is because of the conversation I had with my Commanding Office[r] Major Brown. If there is insuffi[cient] evidence for the above factors to be granted. I ask that the board consider this as well. I believe Major Brown to have been a highly profess[ional] officer. To call into question his duties as the Commanding Officer at the time, I regret. I only hope that the truth comes out and clear[s] my name. I have no evidence of these conversations with Major Brown. I believe contacting Major Brown that he would only state the truth.

AR 59. This statement does not relate that plaintiff was told that he would not be discharged. In his Pretrial Agreement, *see supra* note 2, plaintiff acknowledged "I may, and probably will, be processed for administrative discharge from the United States Marine Corps." Moreover, plaintiff on November 14, 2007, acknowledged on the NJP Punishment Book summary: "I further understand that the acceptance of the NJP does not preclude my command from taking other adverse administrative action against me." AR 56 (Block 4).

 As this case comes to the court in a posture of review of a correction board decision, the court considers plaintiff's arguments against the showing that he must make to overturn the BCNR's decision, *see Wronke,*

787 F.2d at 1576; the court does not consider arguments that should have been presented to the board in the first instance, *Metz,* 466 F.3d at 998, or that were not included in plaintiff's complaint, *see Casa de Cambio Comdiv SA., de C.V. v. United States,* 291 F.3d 1356, 1366 (Fed.Cir.2002). The court's review of the administrative record demonstrates that plaintiff has failed to show that his discharge was unlawful and the denial of reenlistment improper because none of the errors or defects of which he complains affected his substantial rights. *See Christian v. United States,* 337 F.3d 1338, 1343 (Fed. Cir.2003). The Marine Corps processed his NJP and discharge according to the letter of the law, and any imprecision in the forms that plaintiff signed does not affect the validity of his guilty plea or the documents reflecting that plaintiff had knowledge of the consequences of accepting NJP.

Once again plaintiff made arguments that were not raised before the BCNR, including the Navy's failure to prove a charge of custody to support the urinalysis test result which plaintiff contends is required in a drug case based on urinalysis results. Pl.'s Br. filed Mar. 16, 2012, at 4. He also relies on an e-mail chain that was not included in the administrative record to show that his chain of command was aware that he was not pleading guilty. *See* Pl.'s Br. filed Mar. 16, 2012, Encls. 1, 2. To the extent that plaintiff has new evidence in the form of the referenced e-mail chain, he can approach the BCNR with an application for reconsideration.

The court makes two observations. In considering plaintiff's application, the BCNR sought two advisory opinions on the basis of specific questions. The BCNR's decision on review is somewhat unusual in that it contains a comprehensive analysis of its own, as well as signifying its reliance on the advisory opinions. The administrative record reflects that the evaluation of plaintiff's application was painstaking. Plaintiff has not met his burden to demonstrate that the BCNR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Plaintiff is foreclosed from making new arguments on review, but if he has new evidence

that was not presented to the board, that forum is still available to him.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted to the extent indicated, and defendant's motion for judgment on the administrative record is granted, and the Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.